## JOHN HANCOCK & others *vs.* PHILIP WENTWORTH.

An easement in land of a right of passage way to certain buildings is extinguished by
the laying out and construction of a highway over the site of such buildings.

It is no objection to a recovery in a real action, that a highway has been laid out over
the demanded premises or a part thereof; nor that the tenant has an easement in
the demanded premises.

Where several tenants in common of land join as demandants in a writ of entry, and
one of them dies pending the suit, and his share of the land descends to another
demandant, the latter may amend the writ so as to claim therein his enlarged share
of the demanded premises.

WRIT of entry to recover a small parcel of land in Boston,
bounded northeasterly on land over which Blackstone Street has
recently been laid out and established. The demandants count-
ed on their own seizin within thirty years, and claimed as ten-
ants in common in different proportions, as heirs of the late
Governor Hancock. Thomas Hancock, one of the demand-
ants, died intestate, after the action was commenced, leaving
John Hancock, another of the demandants, his sole heir at law,
who claimed a right to proceed in the suit for his proportion
of the demanded premises, as enlarged by descent from said
Thomas.

The writ was dated December 31st 1839. Plea nul disseiz-
in, with the following (among other) specifications of defence ;
viz. that the tenant has had uninterrupted, exclusive and adverse
possession of the demanded premises, and a good title thereto,
more than 50 years next preceding the date of the writ ; that
the demandants, and those under whom they claim, have had no
seizin of the demanded premises within 50 years ; and that on
or about the 1st of August 1833, the city of Boston, by their
mayor and aldermen, legally laid out and opened a highway or
street, called Blackstone Street, over a part of the demanded
premises, and that said street is still open and continued.

The trial was before the chief justice, who made a report of
the case, in substance as follows : The demandants introduced
evidence that Governor Hancock, in 1785, owned a considera-
ble tract of land adjoining the old Mill Creek, of which the de-
manded premises were then parcel, and that he, on the 24th of

August in that year, conveyed to the tenant, in fee, a house and yard adjoining, in two parcels precisely described and bounded, but not including the demanded premises, with the right of a passage way over other lands of the grantor, and " also the privilege in common to the privy or privies on the Mill Creek adjoining Mr. Stickney's barn house on said creek." It appeared that the tenement, thus conveyed to the tenant, was one of several similar tenements, called Hancock's Row ; that there was, in the rear of said tenements, and lying between them and Mill Creek, an open piece of land, being part of the tract owned by Governor Hancock, across which open piece access was had, from the tenant's tenement and three other tenements, to the said outhouses on the margin of the creek. This piece of land, then open, constitutes the demanded premises.

It further appeared, that in 1832 the mayor and aldermen of Boston, being duly authorized, caused the Mill Creek (which was a broad and deep watercourse flowed by the tide) to be filled up, and caused the site thereof, together with a portion of the land adjoining on the southerly side, including part of the demanded premises, to be laid out as a public highway, called Blackstone Street.

There was evidence tending to show, that in the year 1820 or 1821, a ten foot building was erected on the premises, covering the rear thereof next to the creek, and coming up towards the front ; that said building was inclosed by a fence ; that the building and yard were occupied ; and that the building and fence were erected by the defendant, or by him with others, and that he claimed an interest in the building, and received rent for it.

It also appeared that some of the demandants peaceably entered upon the demanded premises, before the commencement of this action, and there claimed title and exercised some formal act of ownership.

The jury were instructed, that if a seizin of the demanded premises was proved to be in Governor Hancock in the year 1785, that seizin would be presumed to continue till his death ; and that unless an alienation or disseizin were proved, he would

be presumed to die seized, and the estate, subject to the ease-ment upon it, to descend to his heirs : That by the deed from him to the tenant, the latter acquired no title to the demanded premises, but only to an easement, by necessary implication, of a right of passage way over the premises, to and from the out houses on Mill Creek : That the use of the land in question, so far as it was necessary or convenient to enable the tenant, or those occupying his estate, to have the benefit of the easement, was not adverse to the title of the owner, and would not tend to show a disseizin : That by the filling up of the creek and converting the site of it, together with a part of the land on the southerly side of it, embracing the entire site of said outhouses, the easement was extinguished, and that, consequently, the right of way to them, by implication, over the demanded premises, was extinguished and no longer existed : But that whether such easement were extinguished, or not, was immaterial to the issue, because the right of soil, demanded in this action, was not in-consistent with the tenant's easement, if it still continued ; and that the demandants, if otherwise entitled, would have a right to recover in this action, notwithstanding such easement : That it is no objection to the demandants' right to recover the de-manded premises, that a part of the same is now covered by a public highway ; such highway constituting a mere public ease-ment, not inconsistent with the seizin in fee put in issue in this action : That whether the act of erecting a building on the de-manded premises, and inclosing them, in 1820 or 1821, was done by the tenant, or by him and others, or whether it amount-ed to a disseizin of the heirs of Governor Hancock, or not, was immaterial, if, as appeared by uncontradicted evidence, the de-mandants, or some of them, entered before the commencement of this action ; as such entry purged the disseizin, if there were any, and entitled them to bring the action on their own seizin.

The jury were further instructed, that if they should find a verdict for the demandants, they might find a general verdict for such proportion of the demanded premises as the aggregate of their respective shares would amount to — the writ not includ-ing, as demandants, all the heirs of Governor Hancock.

The jury were also instructed, that it was unnecessary to specify, in their verdict, (if they should find for the demandants,) whether the premises were subject to an easement in favor of the tenant, or not ; on the ground that such easement was not in issue, in this action, and would not be affected by the judgment.

The jury found " that the tenant did disseize the demandants of 133-180ths of the demanded premises, in manner and form," &c.

" If, in the opinion of the whole court, the proportion of each demandant should have been specified in the verdict, or that the easement is not extinguished, and that it ought to have been specified, the verdict may be amended, and the judgment entered accordingly, as the court may order.  And on the whole case stated, the verdict is subject to the opinion of the whole court, upon all questions of law arising thereon."

*S. D. Parker*, for the tenant.

*Hancock*, for the demandants.

HUBBARD, J.  A question was made on the trial of the issue in this case, whether the tenant had acquired a title to the demanded premises by disseizin ; but as the jury have found a verdict for the demandants on this point, under the ruling of the court, the correctness of which is not denied, the only subject of inquiry which remains is, whether the tenant can successfully defend against the present action by force of the easement originally granted to him in the demanded premises.

The argument of the counsel for the tenant is substantially this ; that it is a controversy as to the reversion of the land which is now demanded, and therefore, while the right to the easement exists, the demandants cannot oust the tenant from his possession of the premises : That in the grant to him, the right was not severed, and a particular privilege given to each estate in the row of tenements, of which the tenant's was one ; but that it was an easement granted over the whole land, to enjoy a privilege in each of the outhouses upon it ; and that, as it appears by the facts in this case that the easement is only suspended, the demandants cannot enter and disturb the possession

38 *

of the tenant : That here has been no act done by either party, by which the right is extinguished ; that there is no evidence of the tenant's intention to relinquish his right, and no non-user for twenty years ; and that if the city were to discontinue Blackstone Street, which was laid out against the will of the tenant, his rights, so far as they are now impaired, would be restored.

But to this argument of the tenant against sustaining the present action, however plausible it may appear to him, there are substantial objections. And first, the right of the demandants to the fee in the demanded premises, and the right of the tenant to an easement in them, are rights independent of each other, and may well subsist together. A man cannot have an easement in his own estate, except only in a few cases where it may be suspended, when he holds the estate in different capacities and under distinct titles, one of which consists of an easement. But where a man acquires an estate, by an indefeasible title, in which he had previously an easement, the easement is merged in the fee and cannot be revived. But no question arises here in regard to the easement. A recovery therefore by the demandants will not affect or disturb the easement of the tenant (if he has one) in the premises ; while a recovery is necessary to protect the demandants' rights, which otherwise, in the situation in which the estate now is, may be lost by disseizin. And it is no objection to a recovery in a real action, that the demanded premises or a part of them have been laid out as a common highway ; for such laying out is but the creation of an easement, and does not affect the title to the fee of the estate. Notwithstanding therefore the tenant may have an easement in the demanded premises, the demandants have a perfect right to maintain this action, as they would have also, supposing the estate remained in the same situation in which it was when the original grant was made, or had been restored to that situation.

But we are further of opinion, that the easement claimed in this case by the tenant, to pass over the land to the outhouses which stood on the mill creek, is not merely suspended, but is extinguished. It is said in Bac. Ab. Extinguishment, that

" where a right, title or interest is destroyed or taken away by the act of God, operation of law, or act of the party, this in many books is called an extinguishment." Co. Lit. 147 *b*. 1 Rol. Ab. 934, 935. So an easement is one of those rights which may be extinguished or destroyed. In this case it is taken away by act of the law. The constituted authorities of the city, being duly empowered, had a right, if the safety and convenience of the citizens required it, to lay out and open Blackstone Street ; and the proprietors of those estates, which were taken for that purpose, had their claim on the city for the injuries sustained by them ; and the tenant among the number. If his easement was disturbed or destroyed, he was as well entitled to remuneration, in proportion to the injury sustained, as the owner of the land.

But it cannot be maintained, in a case like the present, (where the mill pond is converted into land and covered with tenements, the mill creek filled up, and in fact abated as a nuisance, and a new street made, covering part of the demanded premises, and bordered with houses,) that the tenant's easement is only suspended. It is destroyed by the act of the law ; and in every practical and legal view of the matter, it cannot be revived. And if the tenant has not forfeited his remedy by lapse of time, his claim, for aught which now appears, may be good against the city, for the damages he has sustained ; and this claim cannot be affected by the recovery of the demandants against him in the present action.

We think, upon the facts as proved or admitted, that the demandants have established their claim and are entitled to judgment on the verdict.

It appeared on the trial of the case, that Thomas Hancock, one of the demandants, had died intestate and without issue, and that John Hancock, another of the demandants, is his sole heir at law. We think, the fact being stated on the record, the writ may be amended, and John Hancock be allowed to claim for his enlarged share.